SOUTHWEST LEAD AND ZINC COMPANY, Appellant, v.
PHŒNIX INSURANCE COMPANY, Respondent.

Kansas City Court of Appeals, October 24, 1887.

1. PRACTICE — DESCRIPTION IN CONTRACT — WHAT IT INCLUDES IS
QUESTION OF FACT.—Whether the description of a building in a
policy of insurance covers or fairly describes the property intended
to be insured is a matter of fact for a jury to determine, and the
terms of the policy are to be reasonably construed with reference
to the whole subject-matter.

2. ―――― FACTS FOR JURY TO FIND HERE—CASE ADJUDGED.—Upon
the facts developed in this case the jury should find whether what
has been called here the furnace building and the retort building
are to be regarded as one structure ; whether together they com-
prise the "one-story frame building to be occupied by furnaces for
smelting zinc."   And if they so believe, then the plaintiff's loss on
the part burned should be apportioned and his recovery be had
accordingly.   But if they should believe that the property burned
was not the property described in the policy, the finding would be
for the defendant.

APPEAL from Jasper Circuit Court, HON. M. G.
MCGREGOR, Judge.

*Reversed and remanded.*

*Motion for rehearing denied.*

The case and facts are stated in the opinion of the court.

GALEN SPENCER and L. P. CUNNINGHAM, for the appellant.

I.   The only question in the case is, did the insurance policy sued upon insure against fire the room or building which was destroyed.   We say it did ; the defendant says it did not, and the trial court decided it did not, and refused to let the jury pass upon the question.   What property or building the policy insured against fire was a question of fact to be determined by the jury, under instructions.'   But for the introduction of evidence the court or jury could not have known there was any building burned, and when the fact is shown that some building burned, it certainly is proper to learn what building it was; and this is done by the hearing of evidence.   Referring to the policy covering the insurance, it reads "four hundred dollars on their one-story frame building to be occupied by furnaces for smelting zinc."   This was the only building which burned.   There is no dispute as to what the testimony was, for the only evidence was that introduced by the plaintiff.   Now, briefly referring to the evidence, we find the following facts appear : That when the policy was executed the one-story frame building to be occupied by furnaces for smelting zinc was incomplete and unfinished, but permission to complete it was given in the policy, and it was finished and in use before and at the time of the fire ; that this building was partially destroyed by fire on the twenty-eighth day of May, 1883, and the loss exceeded the amount of the insurance on the building four hundred dollars, the sum sued for.   The evidence shows that this building was in two parts, and the witness, Picher, minutely describes its construction and the uses to which it was put.   The best representation of the

subject we can offer is to refer to his evidence. The circuit court held that the portion of the building which burned was not any part of the "one-story frame building to be occupied by furnaces for smelting zinc," as mentioned in the policy. As a matter of fact, we think the court erred in its conclusion and grossly erred in absolutely determining this to be a pure question of law, and deciding against the plaintiff. The two parts were one building, but if it had to be determined as a fact which of the parts did constitute the building insured, the only fair inference would be the building that contained the furnace; and this conclusion was borne out by the evidence. In *Liebenstein v. Insurance Company* (45 Ill. 301), the insurance was effected on "a stock contained in a chair factory situated on Superior street," held to have included not only the stock in the main building, where the manufacturing was done, but also that in the engine building, which was appurtenant to it and connected with it by a platform, and by the belting passing from the engine to the machinery contained in the main building, both buildings being necessary to constitute the factory. The term "factory" does not mean a single building, but may apply to several, where they are used in connection with each other for a common purpose. In *Pennsylvania Marine and Fire Insurance Company v. Lewis et al.* (18 Ill. 562), it is held that the words "starch factory" substantially include the fixtures, etc., necessary to the process of such manufacture. In 20 Barb S. C. R. 635, it was held that "a steam sawmill" covered not only the building itself, but all the machinery and fixtures therein. *Crosby v. Franklin Insurance Company* (5 Gray [Mass.] 509), a policy of insurance by which certain persons are insured for twelve thousand five hundred dollars, namely, twelve thousand dollars on their stock of watches, watch trimmings, etc., contained in their store, No. 69 Washington street, Boston, and five hundred dollars on their "furniture and fixtures in said store," covers not only watches, watch

trimmings, parts of watches, watch materials and watch tools, but also such silver-plated ware, jewelry and other goods as usually form a part of the stock of the shops in Boston where watches and watch trimmings are sold. *Leary v. Central Insurance Company* (111 Mass. 540), is to same effect. In *John Moadinger v. Mechanics Fire Insurance Company* (2 Hall N. Y.), held that the term "stock in trade," when used in reference to the business of a mechanic, a baker for instance, includes not only the materials used by the mechanic, but the tools, fixtures and implements necessary for carrying on the business. In *Phœnix Insurance Company v. Favorite* (49 Ill. 259), where the owners of a packing establishment obtained a policy which covered "cattle and hogs and the product of the same, and salt, cooperage, boxes and articles used in packing, in their stone and frame packing establishment, sheds and yards adjoining, their own or held by them in trust or on commission, or sold but not delivered," held that a quantity of coal in the yard, which was shown to be an article necessary to be used in carrying on the packing business, and the quantity on hand reasonable for the amount of business done in the establishment, was covered by the policy. Nor did the use of the words in another policy, "articles used for packing," instead of "articles used in packing," affect the construction to be given the instrument in that regard. Also a quantity of barrels and tierces held by the assured in storage were covered by the clause which embraced articles "held by them in trust or on commission," the term "trust" not having been used in that connection in any technical sense, but as applying to ordinary bailments. The policy of the law is to enlarge the meaning of the words used in the policy as against the insurer; and if there is any doubt about the application, that doubt will be resolved against the insurer. Wood on Fire Insurance, pages 146–7.

II. In all cases the words of the policy are to be

VOL. xxvii—29

taken most strongly against the insurer. The maxim, *verba chartarum fortius accipiuntur contra proferentem*, is rigidly enforced in all cases where other rules of construction fail. 'This is upon the theory that as the insurer makes the policy, and selects his own language, he is presumed to have employed that which expresses his real intention and the actual contract entered into, and has left nothing to be inferred or supplied by reference to extraneous matters. Wood on Fire Insurance, 128.

III. The only question in this case was, what property was insured? This was a matter of fact to be determined by the jury under the instructions. The insurance was upon a "one-story frame building, to be occupied by furnaces for smelting zinc." The law is reasonable, and intends that things shall be viewed in a plain, direct, and common-sense way. In *Carr v. Insurance Co.* (2 Mo. App. 466), the property insured was described as being a two-story brick building, number 1444, Broadway. The front part of the building was two stories high, and the rear was one story only. The property was partly in the front and partly in the rear portion of the building. A fire originated and destroyed the property in the rear. *Held*, that there was no misdescription of the situs of the property. In *Griswold v. Insurance Co.* (70 Mo. 657), it was held that the removal of a building one hundred and fifty feet would not prevent a recovery unless it increased the risk, and this was a question for the jury. Same case says the house was removed two hundred feet. 1 Mo. App. 102. The circuit court was the judge of the law, and the jury should have been permitted to pass upon the facts.

IV. That the circuit court misconceived its powers, in taking the case away from the jury, we think is already evident. There was no ambiguity in the policy where it used the words, " one-story frame building to be occupied by furnaces for smelting zinc," if the fur-

nace-room and retort-room constitute but one building. But if they were separate buildings, then as to which was the building that contained the furnaces, and which building burned, could only be found out by hearing the evidence. The witness was an experienced manufacturer of zinc, an expert in the business, knew every detail of construction of the smelting works, and testified about them in his evidence. Who, but the jury, could determine whether the witness knew what he was talking about, or spoke truly? The circuit court took upon itself the self-imposed task, at the conclusion of the plaintiff's evidence, to say in effect, "the court finds the facts to be exactly the opposite of all that has been testified to, and all that has appeared in evidence, and will take the case from the jury by instructing them to find for the defendant." Was it a question of law for the court to find out which was the "one-story frame building to be occupied by furnaces for smelting zinc?" Was the identity of the retort-room or furnace-room strictly a question of law? The court could have just as properly found that the plaintiff had never had any smelting works, and there never was any fire, and accordingly taken the case from the jury.

V. The proposition that if there is any evidence tending to prove the allegations of the petition, the case should not be taken from the jury, is too old and familiar to require the citation of authorities to sustain it. Every appellate court throughout the whole country has laid this down as fundamental times innumerable. *Brennington v. Jenkins*, 85 Mo. 75; *Moody v. Deutsch*, 85 Mo. 237; *Groll v. Tower*, 85 Mo. 249.

PHELPS & BROWN, for the respondent.

I. Plaintiff's appeal should be dismissed for failure to comply with rule fifteen of this court, which requires that every part of the transcript relied upon as error, and all that is necessary to show it such, must be

printed in the abstract. Where the sufficiency of the evidence is questioned, so much of the transcript as contained all the evidence on that question should be set out in the abstract *in haec verba*. *Goodson v. Railroad*, 23 Mo. App. 76; *Foster v. Trimble*, 18 Mo. App. 394; *Hansmann v. Hope*, 20 Mo. App. 193.

II. The court below committed no error in withdrawing the case from the jury and directing a verdict for the defendant. There is, in every case, a preliminary question, which is one of law, viz., whether there is any evidence on which the jury could properly find a verdict for the party on whom the *onus* of proof lies. If there is not, the judge ought to withdraw the case from the jury and direct a verdict accordingly. *Merchants' Bank v. State Bank*, 10 Wall. 939; *Powell v. Railroad*, 76 Mo. 80; *Glass v. Gelvin*, 80 Mo. 297; *Commissioners v. Clark*, 94 U. S. 284.

III. Where, as in the case at bar, the policy is specific as to the subject-matter of the risk, it cannot be extended by implication to cover a building not named or embraced within the description of the subject of the risk, nor is evidence admissible to show that the parties intended to have it cover matters not specified. When there is no ambiguity the intention of the parties must be gathered from the policy, and cannot be shown by evidence *aliunde*. *Hews v. Insurance Co.*, 126 Mass. 389; *St. Clair v. Insurance Co.*, 45 Ill. 306; *Insurance Co. v. Insurance Co.*, 32 Md. 37; *Insurance Co. v. Updegraff*, 40 Pa. St. 311; May on Insurance, sect. 420; Wood on Insurance, sects. 55, 56.

IV. It is a common construction that where the property insured is specifically designated, all other is excluded, even though usually of the same class or tribe of that insured. If, however, the policy is general in its description of the property, it may be shown that a certain species of property is usually included in the same class, and so covered by the policy. Wood on Insurance, sects. 55, 57; May on Insurance, sects. 420, 424.

*On motion for re-hearing.*

PHELPS & BROWN, for the motion.

I.   The decision of this case is contrary to the weight and unbroken current of authority, and the following controlling decisions decisive of the case, to which through the inadvertence of counsel the attention of the court was not called, to-wit: *Spiva v. The Osage Coal and Mining Co.*, 88 Mo. 68; *Lenix v. Railroad*, 76 Mo. 86; *Gibbons v. Railroad*, 62 Wis. 564. The case at bar is not one of conflicting evidence. Upon the evidence introduced by the plaintiff (which was uncontradicted) the court below gave an instruction to the effect that the plaintiff could not recover, and the propriety of this ruling was the principal question presented by the record. Where there is no dispute as to the facts, as in this case, there is but one rule, and that is "that it is the duty of the court to apply the law thereto." In the language of Sherwood, C. J., in case of *Powell v. Missouri Pacific Railway Company* (76 Mo. 83): "It is as much the duty and province of the trial court to direct the jury to find a verdict for the defendant, where the undisputed facts show no legal liability to have been incurred, as it is the province of the jury where there is conflicting evidence—evidence tending to establish the demand of the plaintiffs and the defence of the defendant —to return a verdict for either party. This is the well-settled law, both in this state and elsewhere." Again, in the case of *Lenix v. Missouri Pacific Railway Company* (76 Mo. 91), the same judge says: "And it is the duty of the court, when the facts constituting direct contributory negligence are undisputed, to declare to the jury the *inference* which the law draws from the facts, which inference bars the plaintiff of any recovery." The inferences deducible from the undisputed facts in this case, and every reasonable conclusion to be drawn therefrom precludes a recovery by plaintiff.

II.   No *prima facie* case of liability against the

defendant was made out by the plaintiff's evidence, and the action of the court in directing a verdict for the defendant was fully warranted by a current of decisions, consistent and uniform, running through the entire judicial history of this state, without a ripple upon their surface. In the case of *Spiva v. Osage Coal and Mining Company* (88 Mo. 68), an action for damages, on account of the death of plaintiff's husband, caused by injuries received by him in falling down a shaft at defendant's coal mine, at the close of the plaintiff's evidence a demurrer was sustained to the evidence and the jury directed to return a verdict for the defendant. Ray, J., speaking of the propriety of this ruling, thus states the rule in respect to the point in hand : "There being no dispute as to the facts in the case, it was the court's duty to apply the law to the undisputed facts." In the case of *Callahan v. Warne et al.* (40 Mo. 131), which was an action for damages for negligence, at the close of the plaintiff's evidence the trial court refused to instruct the jury that the plaintiff was not entitled to recover on the case made. Judge Holmes, speaking for the court, said : "Where it is plain that the jury could not find a verdict on the evidence offered without reasoning irrationally, against all ordinary common sense, and against all proper notions of justice and right, or against law, or without being influenced by undue sympathy, prejudice, gross misjudgment, or mistaken impressions of the law and facts of the case, the court will declare as a matter of law that there is no competent evidence to be submitted to the jury. This rule was distinctively laid down in *Boland v. Railroad* (36 Mo. 491), and is too well established to require the citation of authorities. Where there is any evidence, or what its legal effect may be, is to be declared by the court. It is proper for the defendant to take the judgment of the court on the plaintiff's evidence by an instruction of this kind. The plaintiff cannot be compelled to take a non-suit; but if he will insist upon

going to the jury, the court may instruct them, in such case, that there is no sufficient evidence before them to sustain the plaintiff's action, and that they will find a verdict for the defendant." *Clark v. Railroad*, 36 Mo. 216.

III. The case of *Tesson v. Insurance Company*, (50 Mo. 112), referred to by Judge Ellison in support of his position "that it was a question for the jury to determine whether the property burned fell within the description used in the policy," will be found, on examination, to bear no analogy to the case at bar, and is, therefore, valueless as an authority in this case. That case was an action on a policy of insurance, and the defence was a breach of warranty, concealment, and misrepresentation. Evidence was introduced by both parties tending to establish the demand of plaintiff and the defence of the defendant. After the close of the case, the court, of its own motion, took the case from the jury by an instruction to the effect that the plaintiff could not recover, and Adams, J., in holding that the trial court erred in giving such instruction, said : "It was in the nature of a demurrer to the evidence predicated on all the facts detailed in evidence before the jury on both sides. If the plaintiff makes out a case upon which he can go to the jury, the court has no right, after the defence is in, to assume it to be true and require the jury to find for defendant." There the plaintiff had made out a *prima facie* case on his own evidence, while in the case at bar Judge Ellison, it will be observed, does not hold that the appellant was entitled to recover on the undisputed facts. There being no dispute as to the facts in the case at bar, the construction of the policy was a question of law to be decided by the court and not by the jury.

SPENCER and CUNNINGHAM, in opposing the motion.

I. There is nothing new in the motion for rehearing. Precisely the same points were made by respondent's counsel in their first brief on the original hearing.

The attempt to cite other Missouri cases which this court knows by heart is but cumulative, and does not tend to shed any additional light.

II.   The language of the policy was "$400 on their one-story frame building to be occupied by furnaces for smelting zinc." The evidence of the plaintiff is all before this court, and we thought and still think it clearly showed the application of the policy to the building which burned, and the consequent liability of the defendant; but whether it did or did not was a question of fact to be determined by the jury under instructions.

III.   We think the case cited by this court in its opinion, *Tesson v. Atlantic Insurance Company* (50 Mo. 112), is in point, opposing counsel to the contrary notwithstanding, For what difference does it make whether a case is taken from the jury after both plaintiff and defendant have introduced their evidence, or after only the plaintiff had concluded his testimony, provided it were proper at all in the given case to take it from the jury? The defendant's evidence might not differ in the slightest from the plaintiff's. The underlying distinction is, does the evidence tend to prove the issue—if so, it must be met with counter-proof and cannot be determined as a matter of law. *Lay v. Insurance Company*, 7 Mo. App. 566; *Smith v. Hutchinson*, 83 Mo. 683; *Ross v. Insurance Company*, 7 Mo. App. 575; *Coudy v. Railroad*, 85 Mo. 79. And a hundred other cases in Missouri, backed by decision and principle laid down everywhere, without exception, support this proposition as just stated.

ELLISON, J.—This action is to recover on a policy of insurance. That portion of the policy under which the insurance is claimed, reads: "Four hundred dollars on their one-story frame building to be occupied by furnaces for smelting zinc." The building was not yet completed, but permission was given that it might be finished. The policy was admitted, and the only evi-

dence taken was that of the president of the plaintiff company. At the conclusion of his testimony the court took the case from the jury, by instructing a verdict for defendant.

The defendant's claim here is, that there were two buildings, calling the one that was burned the gas producer, and, therefore, not covered by the policy, and the one not burned, the furnace for smelting zinc, as described in the policy. But the evidence of the president of the plaintiff company, on this point, was as follows:

"About forty feet distant from the structure for the holding of the retorts, as already described, eight furnaces were built, variously called 'gas-furnaces,' 'gas-ovens,' and 'gas-producers,' made of fire-proof material, fire-brick, common brick and iron. Into these eight furnaces the coal is charged, which is the only fuel used. Flues lead from them to two stacks; these stacks are capped or hooded with large iron boxes; with these boxes are connected two large iron tubes; these tubes discharge into one tube, about five feet in diameter; this tube leads to, and discharges into, chambers of fire-brick checker-work, under·the structure already described, containing the retorts, from whence passages lead to, and are discharged into, the space in which the retorts are placed, by openings under the retorts, called port-holes.     *     *     *
The building enclosing the structures that I have described, that is, the structure carrying the retorts, and the eight furnaces, was in two parts, one of them being about fifty by ninety feet in dimensions, and the other about fifty by sixty feet, with separate roofs and separate foundations, but connected by the iron tubes which I have described, and by a wooden platform, which was used by the men, in passing from one part of the building to the other, and upon which, also, was a tramway for the carrying of coal. Both these parts were built of wood, were one story high, were shingle-roofed, and had basements or cellars under them. That part of the building enclosing the eight furnaces was destroyed by

fire, on the twenty-eighth day of May, 1883. Its value was fully thirteen hundred dollars. The loss was total. * * * These two parts, that is, the part in which the retorts were placed, and the part composed of these eight furnaces, are both absolutely necessary to the smelting of zinc, and each useless without the other. The purpose and office of the furnaces in the part that was destroyed, was to furnish the heat for smelting. Smelting could not be carried on without them." In answer to a question by plaintiff's attorney, the witness said : "In my opinion, these two parts or structures are necessary parts of a furnace for smelting zinc, but if I had to elect between them, and say which of them is the furnace for smelting zinc, I should say the eight furnaces are, because in them the fuel is burned, the fires are made there, the firemen work there, and none of these operations are performed anywhere else. These eight furnaces occupied the building which was burned. * * * On this plat, that part of the building occupied by the retorts is marked 'Furnace A,' and that part occupied by the eight gas-furnaces is marked 'Gas Producer B' ; that part marked 'Gas Producer B,' is the part that was burned ; the part marked 'Furnace A' was not burned ; the part marked 'Furnace A,' and which was not burned, was frequently known and called by the employes of the plaintiff, the 'furnace,' while the part which was burned was generally called by them the ' gas-producer,' 'gas-ovens,' or 'producer.' They were of about equal value. * * * If the part marked 'Furnace A' had been burned, I would have considered that it was covered by the policy. In ordinary conversation, sometimes the whole works are called 'the furnace,' and sometimes various parts of it 'the furnace.' The men generally call that part, or that side, on which they happen to work, as their 'furnace.' The building marked 'Furnace A' was used for smelting zinc, and the building marked 'Gas Producer B,' was used for making heat with which to smelt zinc. If a man were to ask me to

show him the furnace, I would show him both parts, that part where the fires are, and that part where the retorts are. No zinc ore is charged into any part of that marked 'Gas Producer B.' Nothing is charged there but coal. All the zinc ore is charged into the retorts, and all the retorts are in the part marked 'Furnace A.' The separation of the metal from the ore takes place there, and the metal is drawn off there as spelter and ready for market. A retort is not a furnace, and is never called a furnace. The part which was burned was much the more liable to burn than any other part, because the fires are there, and the fire-places, and the grates."

We are satisfied the trial court erred in sustaining a demurrer to the testimony. The only contest between the parties was, whether the building burned was covered by the policy. The court in effect, declared that the structure burned was not only not the building mentioned in the policy, but no part of it. We do not believe such declaration is justified by the testimony. The question whether the property burned was, in whole or in part, the property described in the policy, was, under the evidence contained in the record, a question for the jury. The case of *Tesson v. Ins. Co.* (40 Mo. 33; s. c., 50 Mo. 112), is, in some respects, analogous to the question presented here. That portion of the case which can be fairly said to apply to this, is expressed in the syllabus as follows : "Whether the description in the policy covers, or fairly describes, the property intended to be insured, is a matter of fact for a jury to determine, and the terms of the policy are to be reasonably construed with reference to the whole subject-matter."

I am of the opinion that the jury should pass upon the facts, as developed ; that they should find whether what has been called here the furnace-building, and the retort-building, are to be considered as one structure ; whether, together they comprise the "one-story frame

building to be occupied by furnaces for smelting zinc." If they so believe, then the plaintiff's loss on the part burned should be apportioned, and his recovery be had accordingly. If the jury should believe the part burned was not the property described in the policy, then the finding would, of course, be for the defendant, and as it is conceded the loss is greater than the amount of insurance, if the jury should believe the structure burned was the one covered by the policy, the finding would be for plaintiff, in the full amount of its claim.

The judgment is reversed and the cause remanded. All concur.