The Southwest Lead & Zinc Co. v. The Phœnix Ins. Co.

The Southwest Lead & Zinc Company, Respondent,
v. Phœnix Insurance Company, Appellant.

**St. Louis Court of Appeals, May 13, 1890.**

**Practice, Appellate : SECOND APPEAL: RES ADJUDICATA.** When a
cause is twice appealed, the declaration of the law on the first
appeal governs both its retrial and the decision on the second
appeal, provided the facts are substantially the same on both
occasions.

*Appeal from the Greene Circuit Court.*—HON. W. D.
HUBBARD, Judge.

AFFIRMED.

*W. H. Phelps* and *E. O. Brown,* for appellant.

( 1 ) The court below erred in not withdrawing the
case from the jury and directing a verdict for defendant
at the close of plaintiff's evidence. *Powell v. Rail-
road,* 76 Mo. 83; *Lenix v. Railroad,* 76 Mo. 86–91;
*Bank v. Bank,* 10 Wall. 939; *Glass v. Gelvin,* 80 Mo.
297; *Commissioners v. Clark,* 94 U. S. 284; *Spiva v.
C. and M. Co.,* 88 Mo. 68. ( 2 ) By the terms of the
policy declared on, the amount insured was distributed
in specific items upon several buildings and pieces of
property, the effect of which was to limit the extent of
the insurance to each building or piece of property.
The risk in this case was expressly taken on their "one-
story frame building occupied by furnaces for smelting
zinc," and cannot be extended or construed so as to
make it cover more than "one building." Clearly then
both buildings, "Furnace A." and "Gas Producer,"
were not covered by the policy, and in determining to
which of these two frame buildings the description most

appropriately applies we find that the building called "Furnace A," as distinguished from the "Gas Producer," is the only building which falls within the description used in the policy, and this building was not injured. *St. Clare v. Ins. Co.*, 45 Ill. 306 ; *Hews v. Ins. Co.*, 126 Mass. 389 ; *Hare v. Bardstow*, 8 Jur. 938 ; 5 R. I. 433 ; *Moadinger v. Ins. Co.*, 2 Hall, 490 ; *Foundry v. Ins. Co.*, 1 Cliff. 300 ; *Ins. Co. v. Ins. Co.*, 36 Md. 37 ; *Ins. Co. v. Updegraff*, 40 Penn. St. 311 ; May on Insurance, secs. 420, 424 ; Wood on Insurance, secs. 55, 56, 57.

*L. P. Cunningham, Galen Spencer* and *Thomas Dolan*, for respondent.

The action of the circuit court, from which the appeal was taken, was strictly correct. The judgment is for the right party. The circuit court did not err in refusing to take the case from the jury, or in refusing to instruct that the plaintiff could not recover. To have done so would have been flagrant error. See this identical case, upon the same policy, and for the same fire. *Lead & Zinc Co. v. Ins. Co.*, 27 Mo. App. 446. It was purely a question of fact to be determined by the jury, under instructions, as to which was the "one-story frame building" that was occupied by furnaces for smelting zinc. This could only be determined by the evidence, and after the evidence was heard ; what it proved, or tended to prove, was wholly for the jury.

BIGGS, J.—This is an action on a policy of insurance to recover for the destruction of a building, which the plaintiff claimed was covered by a policy issued by the defendant. The defense was that the building burned was not covered by the policy, and that consequently the defendant was not liable. There was a jury trial, and the verdict and judgment were in favor of the plaintiff for the full amount. From this judgment the defendant has appealed

The errors complained of relate to the instructions and the admission of incompetent and irrelevant testimony.

The plaintiff is, and was at the times hereinafter mentioned, the owner of certain works for the reduction of zinc ore. The works consisted of various buildings, all of which were in process of construction at the time the insurance in question was taken out. The policy was issued on the thirteenth day of July, 1882, and by its terms the following specific property was insured for the period of one year : *First.* " Five hundred dollars on their two and one-half story metal building   * * *   to be occupied as reduction works, pottery, engine-house and elevator." *Second.* " Eight hundred dollars on fixed and movable machinery," etc. *Third.* "Four hundred dollars on their one-story frame building to be occupied as a calciner." *Fourth.* "Four hundred dollars on *their one-story frame building to be occupied by furnaces for smelting zinc.*" *Fifth.* "One hundred and fifty dollars on their one-story frame building occupied as an office." During the life of the policy one of the buildings belonging to the plaintiff's zinc works was destroyed by fire, and the plaintiff claims that the burned building was covered by the fourth clause of the policy. The defendant denied this and contended that the building occupied by the furnaces for smelting zinc was not burned. This was the sole issue.

The controversy concerning the identity of the building or the subject-matter of the insurance grew out of the following state of facts. The plaintiff's zinc works were constructed for the purpose of smelting the kind of zinc ore designated as " zinc blende." The process consists in crushing the ore and placing it in a furnace called a "roaster" or "calciner." The roasting separates the sulphur and leaves a crude oxide of zinc. After the ore has been roasted, the smelting

process begins in retorts constructed of fire clay. The retorts belonging to plaintiff's works were constructed in a one-story frame building, which we will designate as "A." This building was incomplete at the time the policy was issued. The heat is not applied directly to the ore, but to the outside of the retorts. The pattern of furnace used by plaintiff was known as "Seiman's regenerative gas furnace," in which, instead of building fires directly under the retorts, the actual firing of the fuel was done in furnaces usually detached from the retorts. The furnaces or "gas ovens" as they were sometimes called, belonging to the plaintiff's works, were situated in a one-story building, which we will designate as "B," and which was also, at the date of insurance, in process of construction. This structure was about forty feet from structure "A," and the two were connected by a tramway and two large iron pipes. The gas generated in the ovens or furnaces in "B" was conveyed through the pipes to the retorts in "A" in which the ore was placed. When the gas reached the retorts, it came in contact with a stream of air, and this produced a flame or blaze sufficiently hot to smelt the ore contained in the retorts. In this manner the smelting of the ore was completed. The structure "B" only was burned.

The plaintiff's theory was that, under the peculiar process adopted by the plaintiff for smelting ore, the phrase, "building occupied by furnaces for smelting zinc," must be construed to mean a building composed of two parts; one where the gas was generated and the fuel directly applied, the other where the heat was applied to the retorts containing the ore. On the other hand, the insurance company resisted the claim upon the ground, that the description of the property in the fourth clause of the policy could only apply to *one building*, and that, as the structure containing the retorts was the only one to which the descriptive words

in the policy could possibly be made to apply, its demurrer to plaintiff's evidence ought to have been sustained. The principle upon which the defense is predicated is that, "if the property insured is specifically designated, all other is excluded, even though usually of the same tribe of that insured."

The plaintiff, in support of its case, introduced as a witness, O. H. Pitcher, its former president. It was admitted that the witness was an expert in the smelting of zinc ore, and that he was thoroughly acquainted with the process adopted by plaintiff for reducing ore. After giving a detailed description of this particular method, the witness undertook to describe to the jury the two buildings "A" and "B," and the relation that they bore to each other in the smelting of ore. We extract the following from his testimony bearing directly on the subject:·

"Q. Now, that we may understand this subject, you say that the eight furnaces were situated in this building on the left ( meaning '.B') ? A. Yes.

"Q. You say that the heat is produced in those furnaces by what process; what kind of fuel? A. Coal.

"Q. And where does that heat ascend? A. Well, those eight furnaces are located or built in groups of four. The combustion products from four of them are led into one stack, and from four others into another stack; the top of these stacks are hooded with a square box; each of them delivers its combustion product through a separate tube, which in this case extends just far enough so that the down-take of it will miss the building. Each one of those drops down with a down-take, as shown in the picture, and below them it connects into a main pipe five feet in diameter, which then runs over into the room where the retorts are.

"Q. Then in which of those rooms were the fires made? A. Well, there is fire all over zinc works. I can't to my idea divide those things. The fires, as

originally built, the firing of the coal—the fuel—is done in that part of the building which is marked there number 1 (designated in this opinion as 'B') on the left of those pictures. But the flame and heat in that, and in the part which contains the retorts, comes back through the checker work, until it finally goes out of the stack and is discharged; there isn't any one place which is free from fire, flame and heat.

"*Q.* But I asked you in which building was the fire built? *A.* In that part of the building which was burned (meaning 'B').

"*Q.* In which building were the eight furnaces contained? *A.* That same building.

"*Q.* Were there any furnaces in the other compartment or room of that building—I mean the building in which the retorts were? *A.* Well, to my mind, as I have already said, *the whole thing is a furnace.*

"*Q.* But in the sense that I mean, a furnace wherein you build a fire? *A.* Well, the fire is built in this part which was burned, as I say. But that doesn't comprise to my mind *the whole furnace.* * * *

"*Q.* I will ask you whether or not these two portions of the building ('A' and 'B') were essential to each other in the use and operations of the works. *A. They are parts of the same furnace necessarily, because they are both necessary to get the fire and heat to the material to be reduced and smelted.* Indeed, furnaces in which the fire is made, which were in that part which was burned, are to the rest of the furnace exactly what *any firebox is to any common furnace.* They are a part of that furnace."

The plaintiff relied chiefly upon the testimony of Mr. Pitcher, and the portion of his testimony embodied herein is deemed by us sufficient for a proper understanding of the court's declarations of law to the jury. On plaintiff's motion the court gave the following instructions:

"1. If the jury believe from the evidence that the one-story frame building or a portion thereof, occupied by furnaces for smelting zinc, described in the policy introduced in evidence, was destroyed by fire at the time testified by the witnesses, the jury will find the issues for the plaintiff and assess its damages at the value of the building or portion thereof destroyed, not exceeding the sum of four hundred dollars, together with interest at the rate of six per cent. per annum from the ninth day of November, 1883.

"2. If the jury believe from the evidence that plaintiff's furnaces for smelting zinc mentioned in the policy read in evidence from their construction and use consisted of two sections or parts, each of which was necessary for the smelting of zinc in the process used by plaintiff, and that the fuel for smelting such ore was charged and fired in one of said sections or parts, and the other section or part contained the retorts, into which the calcined zinc ore was charged and the metal finally produced by the heat generated from the fuel charged and fired in the other section or part, and that said two sections or parts were necessarily connected by a pipe or tube sufficient to carry the heat and product of combustion from one section or part to the other, and by a tramway for carrying coal and for the passage of the workmen from one section or part to the other, although distant forty feet or more from each other, and not resting on the same foundation or covered by the same roof, then either of said sections or parts was covered by the terms of said policy."

On behalf of the defendant the court gave the following instruction: "2. The court instructs the jury that only one building was covered by the fourth clause of the policy read in evidence, and that is their one-story frame building occupied by furnaces for smelting zinc. It was this building and no other that defendant insured, and in this case, if the jury find

from the evidence that the plaintiff's one-story building occupied by furnaces for smelting zinc was not injured or destroyed by the fire in question, the plaintiff cannot recover, and your verdict should be for the defendant."

The defendant's counsel object to the plaintiff's second instruction for the reasons that it states an erroneous proposition of law, and is diametrically opposed to the defendant's instruction, which declared that but *one building* was covered by the policy. The last objection is untenable, because the theory of the plaintiff's second instruction is, that there was *really but one building* occupied by the plaintiff's furnaces for smelting zinc, but that the peculiar process adopted by plaintiff necessitated two compartments, and that the gas ovens in the one and the retorts in the other must be regarded as composing the component parts of "the furnaces for smelting zinc." Looking at the question from this standpoint, it will be readily conceded that the instruction does not authorize a recovery upon the idea that the policy covered two separate and distinct buildings. The other objection urged against the instruction presents a question of much difficulty, and it really presents the legal proposition upon which the whole case hinges. It is a well-settled rule of insurance law that where property insured is specifically designated, all other is excluded, even though of the same class. From this premise, the defendant argues that, by the very words of the policy, only one building was insured, and that, necessarily, all other buildings were excluded; that, as the building "A" is the only one that answers the descriptive words in the policy, the ordinary rules of construction would confine the risk to that building alone. Hence it is claimed that the trial court committed error in submitting to the jury the question, whether the building containing the "gas ovens" and that containing the retorts were to be

regarded as one structure, and whether they together comprised "the one-story frame building occupied by furnaces for smelting zinc."

This suit originated in the Jasper county circuit court, and, on a trial, that court held that, under the evidence, the plaintiff could not recover. An appeal was had from this judgment to the Kansas City Court of Appeals, where the judgment of the lower court was reversed, and the cause remanded. *Southwest Lead & Zinc Co. v. Ins. Co.*, 27 Mo. App. 446. There was a change of venue to the circuit court of Greene county, and the case has in this way reached us on a second appeal. Upon this state of the record, it is quite important for us to ascertain the purport and extent of the decision of the Kansas City Court of Appeals, because whatever was there decided furnishes the law for this case, provided the facts are substantially the same. *Bevis v. Railroad*, 30 Mo. App. 564; *Bank v. Taylor*, 62 Mo. 338; *Forester v. Railroad*, 26 Mo. App. 123; *Adair County v. Ownby*, 75 Mo. 282; *Gaines v. Fender*, 82 Mo. 497; *McKinney v. Harral*, 36 Mo. App. 337. If the second trial was had in conformity to the rulings of the Kansas City Court of Appeals, then we are bound to uphold the judgment, whatever our individual opinions of the legal questions involved may be.

The determination of the case on the former appeal was made to turn, as it must in this case, upon the admissibility of Pitcher's testimony, and its force and effect. The opinion contains a very full statement of this testimony, and we find, upon comparison, that it is substantially the same as in the record before us. The court said: "The only contest between the parties was whether the building burned was covered by the policy. The court, in effect, declared that the structure burned was not only not the building mentioned in the policy, but no part of it. We do not believe such declaration is justified by the testimony. The question, whether

the property burned was in whole or in part the property described in the policy, was, under the evidence contained in the record, a question for the jury. The case of *Tesson v. Ins. Co.*, 40 Mo. 33 ; s. c., 50 Mo. 112, is, in some respects, analogous to the questions presented here. That portion of the case which can be fairly said to apply to this is expressed in the syllabus as follows : ' Whether the description in the policy covers, or fully describes, the property intended to be insured, is *a matter of fact* for a jury to determine, and the terms of the policy are to be reasonably construed with reference to the whole subject-matter.' I am of the opinion that the jury should pass upon the facts as developed ; that they should find whether what has been called here the furnace building and the retort building are to be construed as one structure, or whether together they comprise the ' one-story frame building, to be occupied by furnaces for smelting zinc.' ' "

It must be conceded that the case was retried in conformity with the foregoing decision, and we ought not, and cannot, put the trial court in the wrong without violating well-established law. The doctrine of *res adjudicata*, as applicable to this case, is both reasonable and just. If the law was otherwise, there would be no end to litigation, and litigants would be led to speculate on their chances of success by successive appeals. It follows that we must rule adversely to the defendant in reference to the various assignments touching the admission of evidence and refusal of instructions.

The judgment of the circuit court will, therefore, be affirmed. All the judges concur.